[L. A. No. 763.   Department One.— March 20, 1901.]

SOUTHERN PACIFIC RAILROAD COMPANY, Appellant, v. BERTHA CHOATE, Respondent.

RAILROAD GRANT — SURVEY OF MEXICAN GRANT — PATENT — CONTRACT OF SALE — CONFIRMATION BY CONGRESS. — Lands which, at the time of a railroad grant in 1871, were within a prior survey of a Mexican grant which was not approved, but were not within a later survey thereof approved in 1879, and which were thereafter patented to the railroad company in 1894, if considered *sub judice* at the date of the grant, and not subject to such patent, were still subject to the disposal of Congress; and by acts of Congress limiting the time within which action would be brought to set the patent aside, and especially by the act of 1896 confirming the right and title of *bona fide* purchasers from the railroad company, all defect or invalidity in the title of the railroad company was cured as to land contracted to be sold by it to a purchaser from it, who made the contract of purchase in good faith in 1891, under an agreement that the railroad company · was to obtain a patent therefor, and that the purchaser would not deny its right thereto under the railroad grant.

ID. — RESCISSION OF CONTRACT OF SALE — LOSS OF RIGHT. — The purchaser under such contract of sale, by paying part of the purchase-money, and retaining possession under the contract for more than seven years, and for three years after the patent had been issued, and until after the confirmation of her right by act of Congress, before any objection was made to the title, and by never making any offer to restore the possession, lost all right of rescission.

ID. — ESTOPPEL OF PURCHASER. — The purchaser under such contract is · estopped by the terms of the contract of sale, and by her conduct thereunder, to deny that she was a *bona fide* purchaser whose right was confirmed by the act of Congress, which conferred upon her, as such purchaser, a perfect title upon obtaining a deed from the railroad company.

APPEAL from a judgment of the Superior Court of San Bernardino County.   J. L. Campbell, Judge.

The facts are stated in the opinion of the court

William Singer, Jr., and H. V. Reardan, for Appellant.

Shirley C. Ward, for Respondent.

VAN DYKE, J.—The action is for the balance of the unpaid purchase price for certain tracts of land in San Bernardino County, and to foreclose the right of the defendant

therein. The complaint contains two counts, each declaring upon a separate contract for a separate tract of land. Judgment went for the plaintiff as to the first count, and in favor of the defendant as to the second. The appeal is taken from the latter part of said judgment. The finding of the court on which the portion of the judgment in favor of the defendant was entered recites that from the agreed written statement of facts introduced in evidence the plaintiff was not, on the 18th of May, 1891, and has not been since, and is not now, the owner of the land described in said contract set forth in the second count, and that plaintiff has not done or performed all the things required of it by the terms and conditions of said contract, in this, that it has not at any time been able to furnish to defendant a good or marketable title to the tract of land described in said agreement. The agreed statement of facts referred to, as shown in the record, states that the lands described in the second cause of action were, at the time of the grant by Congress to the plaintiff under the act of March 3, 1871, claimed by the owners of the Jurupa Rancho (a confirmed Mexican grant by specific boundaries) to be within the boundaries of said rancho, according to a survey which had then been made by deputy United States surveyor, but that such survey was never finally approved by the United States government, and upon the thirteenth day of May, 1876, was rejected and set aside; that, by a new survey of the northern boundary of said rancho in 1878, finally approved and patent issued thereon in May, 1879, the lands described in said second cause of action were not included within the boundaries of such rancho as finally surveyed and patented. The judgment entered in favor of the defendant on the findings was, that she recover from the plaintiff the sum of money paid on the contract of purchase, and that upon the repayment of said money by the plaintiff, with legal interest thereon, the plaintiff have judgment against said defendant and all parties claiming by, through, or under her, forever barring and foreclosing them from any right to purchase the lands described in the contract set forth in the second count of the amended complaint.

As appears from the argument contained in respondent's brief, the court below rendered judgment in favor of the defendant upon the second count, on the ground that the land in question, having been claimed as a part of a former Mexican grant, was *sub judice* at the date of the act of Congress, and

therefore did not pass by said grant to the railroad company, and that the patent issued thereafter, under the decisions of the supreme court of the United States, issued without authority of law, and was therefore void. But it is recited in the stipulation referred to, that such contract was made between the plaintiff and the defendant with the full knowledge on the part of the defendant of all the matters and things hereinbefore stipulated to be facts, and in the contract between the plaintiff and the defendant, "it is further agreed that the party of the second part will never deny that the tracts herein described, or any part of them, are a part of said grant, and will do no act to hinder, delay, or impede the obtaining of patent for them by the party of the first part; and that she will not obtain or hold possession of all or any of them adversely to said party of the first part." The contract in question was entered into, May 18, 1891, at which time one fifth of the purchase price was paid by the defendant to the plaintiff, and the remaining portion was made payable on or before May 18, 1896. By the terms of said contract the said defendant was entitled to the possession of the land therein agreed to be conveyed. The patent was issued to the plaintiff, August 15, 1894. The defendant paid annual interest on the deferred payments, under the terms of her contract of purchase, up to May, 1894, and this action was commenced in March, 1898; and in answer to the amended complaint, filed April 29, 1898, the defendant first makes objection to the title on the part of the plaintiff, and demands a return of that portion of the purchase-money already paid on the contract.

The defendant has not brought herself within the rule in reference to the right of rescission. Rescission, when not effected by consent, can be accomplished only by use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: 1. He must rescind promptly on discovering the facts which entitle him to rescind; 2. He must restore, or offer to restore, to the other party everything of value which he has received from him under the contract. (Civ. Code, sec. 1691.) In this case it was nearly seven years after the contract was executed, and four years after the patent had issued to the plaintiff, before objection was made to the title by defendant, and no offer appears to have been made to restore possession, or to put the plaintiff *in statu quo*.

After the approval of the last survey of the Jurupa Rancho,

and the issuance of a patent thereon, the land in question be-
came a part of the public domain, and if not included in the
grant to the railroad, as contended by respondent, was clearly
subject to the disposal of Congress.  Congress had the absolute
power either to confirm the title of the land to the railroad
company, or to donate it to the company, or to dispose of it in
any manner it saw proper.  March 3, 1891, Congress passed
an act limiting the time within which suit should be brought
to set aside patents issued under like circumstances as this to
the plaintiff company, and again (March 2, 1896) passed
another statute on the same subject.  In *United States* v.
*Winona etc. R. R. Co.*, 165 U. S. 463, the supreme court of the
United States had occasion to consider these several acts of
Congress.  In the opinion the court says: "Thus in the act of
1891, it provided that suits to vacate and annul patents there-
tofore issued should only be brought within five years, and
that as to patents thereafter to be issued, such suits should
only be brought within six years, after the date of issue.  Under
the benign influence of this statute, it would matter not what
the mistake or error of the land department was, what the
frauds and misrepresentations of the patentee were, the patent
would become conclusive as a transfer of the title, providing
only that the land was public land of the United States, and
open to sale and conveyance through the land department.
The act of 1896 extended the time for the bringing of suits for
patents theretofore issued for five years from the passage of
that act.  It is true that these appellees cannot avail them-
selves of these limitations, because this suit was commenced
before the expiration of the time prescribed, and we only refer
to them as showing the purpose of Congress to uphold titles
arising under certification or patent by providing that after a
certain time the government, the grantor therein, should not
be heard to question them.  But limitation was not the only
protection given.  The act of 1896, which extended the period
of limitation, followed such extension with this proviso: 'But
no patent to any lands held by a *bona fide* purchaser shall be
vacated or annulled, but the right and title of such purchaser
is hereby confirmed.'  It is true, this act was passed after the
commencement of this suit,—indeed, after the decision by the
court of appeals,—but it is none the less an act to be con-
sidered.  There can be no question of the power of Congress to
terminate, by appropriate legislation, any suit brought to as-

sert simply the rights of the government. . . . We are of the opinion that Congress intended, by the sentence we have quoted from the act of 1896, to confirm the title which in this case passed by certification to the state. It not only declares that no patents to any lands held by a *bona fide* purchaser shall be vacated or annulled, but it confirms the right and title of such purchasers. Given a *bona fide* purchaser, his right and title is confirmed, and no suit can be maintained at the instance of the government to disturb it." Again: "These being the provisions of the act of 1887, the act of 1896, confirming the right and title of a *bona fide* purchaser, and providing that the patent to his lands should not be vacated or annulled, must be held to include one who, if not in the fullest sense a '*bona fide* purchaser,' has nevertheless purchased in good faith from the railroad company. . . . Our conclusion is, that these acts operate to confirm the title to every purchaser from a railroad company of lands certified or patented to or for its benefit, notwithstanding any mere errors or irregularities in the proceedings of the land department, and notwithstanding the fact that the lands so certified or patented were, by the true construction of the land grants, although within the limits of the grants, excepted from their operation, providing that he purchased in good faith, paid value for the lands, and providing, also, that the lands were public lands in the statutory sense of the term, and free from individual or other claims."

It does not lie in the mouth of the defendant to say that she is not a *bona fide* purchaser from the plaintiff railroad company; and besides, her acts under the purchase, as already recited, are inconsistent with any other theory than that she was a *bona fide* purchaser. This being the case, the act of Congress referred to, as construed by the supreme court of the United States, cured any defect, or even invalidity, in the patent or title of the plaintiff, and inured to the defendant as a perfect title upon obtaining a deed from the plaintiff in accordance with her contract of purchase.

The portion of the judgment appealed from is reversed and cause remanded for further proceedings in accordance with this opinion.

Garoutte, J., and Harrison, J., concurred.